# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2208

_____

United States of America,      *
           *
      Appellant,      *
           *   Appeal from the United States
     v.      *   District Court for the
           *   Southern District of Iowa.
Leonel Rodriguez-Ceballos,      *
           *
      Appellee.      *

_____

Submitted: February 10, 2004

Filed: April 29, 2004 **(Corrected 5/5/04)**

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

In this direct criminal appeal, the government challenges the sentence imposed by the district court after Leonel Rodriguez-Ceballos pleaded guilty to illegal reentry following deportation.[1] At sentencing, the district court departed downward from a total offense level of 21–which included a 16-level increase based on a prior conviction for an aggravated felony–to a total offense level of 16. The court based its departure decision on the "disproportionate impact" of applying the "entire 16-level increase" to Rodriguez-Ceballos's total offense level. The court then sentenced

_____

[1] 8 U.S.C. § 1326(a).

Rodriguez-Ceballos to 24 months' imprisonment, which was the lowest sentence within the resulting 24-30 month sentencing range. On appeal, the government argues that the district court erred in its decision to depart downward. We agree and remand for resentencing.

## I.

The sentencing court expressed particular concern with the "disproportionate impact" Rodriguez-Ceballos's prior aggravated-felony conviction (for Domestic Abuse–Assault with a Dangerous Weapon[2]) had on his sentencing range. This conviction stemmed from a domestic dispute between Rodriguez-Ceballos and his girlfriend, "S.B." According to the Presentence Investigation Report (PSR), "[Rodriguez-Ceballos] threatened her with a knife, squeezed and twisted her breasts, and stated he would kill her and cut her into little pieces if she called the police." Rodriguez-Ceballos submitted an objection letter characterizing that assault as a "one-time occurrence," and further stated that S.B. "is not afraid of [Rodriguez-Ceballos], and . . . intends to move to Mexico to reside with [Rodriguez-Ceballos] when he is eventually deported to his native country." Rodriguez-Ceballos's written objections did not dispute that he used a knife during the assault.

The Probation Office declined to change the PSR pointing out that the information at issue came from "police reports." The Probation Office also pointed out that "[d]omestic violence literature indicates that often times, victims of assault recant the statements made to police and others." However, the Probation Office did note the objection in the final version of the PSR.

At the sentencing hearing, Rodriguez-Ceballos presented testimony from S.B., who presented herself as Rodriguez-Ceballos's fiancée. S.B. claimed that she "got hit," but that Rodriguez-Ceballos did not threaten her with a knife. She acknowledged

---

[2] In violation of Iowa Code § 708.2A(2)(c).

telling the police that he threatened to cut her up into little pieces, but she claimed her poor grasp of the Spanish language caused her to misunderstand Rodriguez-Ceballos statement. The government offered two documents into evidence 1) a no-contact order entered on August 1, 2002 for S.B.'s protection, and 2) the state court judgment that documented Rodriguez-Ceballos's conviction based upon a plea agreement and recited that the crime involved the use of a knife.

Following the evidentiary hearing and the arguments of counsel, the district court stated that the "record . . . suggests that this was an altercation between two persons involved in a personal relationship," and concluded that "there is serious question as to whether or not a knife was actually utilized, despite the reference to the use of a knife in the plea." The district court somewhat discounted S.B.'s credibility expressing "some concern that care for the [d]efendant today may have caused the witness to be more generous about the prior events than were accurate." The court proceeded to sentence Rodriguez-Ceballos to 24 months' imprisonment, after granting a five-level departure. The government appeals alleging that the sentence imposed is contrary to the Guideline's methodology for consideration of the seriousness of a defendant's prior offense.

## II.

In Iowa, Rodriguez-Ceballos pleaded guilty to the crime of Domestic Abuse–Assault with a Dangerous Weapon, in violation of Iowa Code § 807.2A(2)(c). When he entered his plea, Rodriguez-Ceballos was represented by counsel and had the assistance of an interpreter. Rodriguez-Ceballos was sentenced to two years in prison, with all but fifteen days suspended.[3] The state court judgment included Rodriguez-Ceballos's signature and also included the statement "I did the following

---

[3] On August 21, 2002, Rodriguez-Ceballos was deported to Mexico. The no-contact order was canceled on August 22, 2002. On November 20, 2002, a one-count indictment was filed charging Rodriguez-Ceballos with illegal reentry.

to commit this crime," followed by this handwritten declaration: "On 7-18-02 in Polk Co. I assaulted [S.B.] with a knife placing her in fear of an assault."

We have previously considered the principal issue in this case–whether the circumstance of a prior offense is a proper basis to support a sentencing departure under U.S.S.G. § 2L1.2. In *United States v. Dyck*, 334 F.3d 736, 740–41 (8th Cir. 2003), we concluded that they were not. Rodriguez-Ceballos acknowledges the holding of *Dyck* and attempts to avoid the precedent by characterizing the district court's departure as a finding that the prior crime of violence did not occur at all. He contends that absent a knife (or other dangerous weapon), he would have been guilty of only a misdemeanor offense, resulting in no enhancement under § 2L1.2.

Rodriguez-Ceballos's argument is essentially a collateral attack on the validity of his state court conviction. However, absent express statutory authorization, a prior conviction used to enhance a sentence cannot be collaterally attacked unless a complete deprivation of counsel exists. *Custis v. United States*, 511 U.S. 485, 490–97 (1994). "Federal courts are not forums in which to relitigate state trials." *Id.* at 490 (citations and internal quotations omitted). Rodriguez-Ceballos was represented by counsel in the Iowa case, and no express provision allows him to collaterally attack the validity of this conviction for purposes of sentencing. *Cf.* 21 U.S.C. § 851(c), (e) (providing limited ability to collaterally attack statutory-sentencing enhancement in drug cases).

After careful de novo review of the record, we conclude that the district court erred in granting Rodriguez-Ceballos a downward departure. *See* PROTECT Act, 151 Pub.L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003) (standard of review); *United States v. Gonzales-Ortega,* 346 F.3d 800 (8th Cir. 2003) (PROTECT Act standard of review applies to pending appeals even though sentencing occurred before Act became law). Accordingly, we reverse and remand for resentencing consistent with this opinion.

_____